Radcliff, J.
From the state of the case I think it a fair presumption, that the note was purchased by the defend- " ant after the assignment by the plaintiff to the trustees.
The assignment was made oil the 16th January, 1793. The defendant in his answer to the bill in chancery states generally, that he purchased the note in the year 1793, without pointing to any particular period of that year, but saying “ the month was unknown.” It is more than probable, if the purchase had preceded the assignment, or if the defendant had any real doubt of that fact, that he would have stated particularly his knowledge or doubt respecting it. His answer to this point was evasive, and connected with the other circumstances, justifies a presumption against him.
I consider it as a principle settled both in England, and by our own practice,, that in cases like the present a court of law, (2 Bl. Rep. 1269; 1 Term Rep. '619 ; 3 Term Rep. 82; 4 Term, 341; 7 Term, 670,) will regard the assignment of a chose in action, and protect the interest of a cestuy que trust against every person having notice of the trust, or who, is bound to take notice of it.(a) If, therefore, the defendant, at the time of obtaining the note, had notice, or was bound to take notice of the trust created by the assignment, he ought not to be permitted to avail hmself of the set-off.
*60 £*53] *The notice bywhich parties are affected, is either ex- , . ■ press or implied; under the head of implied notice, it has long been held in a court of equity, "(1 Atk. 490, 2 Fonb. 156,) “ that whatever is sufficient to put a party upon inquiry, is' good notice.”- This is a just and salutary rule, calculated to preserve good faith, and to protect the rights of individuals, and whenever the question of notice occurs, must be'equally applicable to courts of law as to courts of equity. It has in fact been adopted by courts of law, , and in cases similar to the present. The defénce here rests On a note purchased after it had become due. This circumstance alone is a ground of suspicion, and has been' held sufficient to make it incumbent on the party receiving the note, to inquire and satisfy himself that it is good. If he does not, he takes it at his peril, subject to every equitable defence in favor of the antecedent parties against whom he may attempt to enforce it.- The present case is still stronger; the defendant not only purchased the note, when overdue, but at a great; discount, and avowedly, for the purpose of setting it off against the present demand.
The consideration of the purchase and the object in view, strongly characterize this transaction. The defendant knew the note was dishonored ; and the circumstance of obtaining it, at so. great an-undervalue, shows that he also knew that Johnson was incompetent to pay.' . He must, have considered him a bankrupt, and he. ought also to have considered, that his creditors had an interest in his debts and property. He had even reason to presume that the property of this bank-, rupt was, in some way or other disposed of for the benefit» of • his creditors; at least the circumstances which appeared, were sufficient to put him on his guard, and to require him to forbear from a speculation questionable in itself, and which if successful, might prove injurious to the creditors'of Johnson. I therefore, think that in construction of law, there was sufficient notice to protect the claims of bona fide creditors. The object of the defendant was, clearly a speculation at the expense of some one; an experiment to get rid of an [*54] * honest debt by means of bad papery without pay *61 ing an equivalent; such an attempt ought not to be encouraged, to the injury of third persons. The decision of this case, will not affect the negotiability of promissory notes for all the purposes contemplated by the statute, made in their favor. The intent of that statute was not to give currency to notes already dishonored, nor to open a door for speculations of this sort, but to promote the convenience of trade, by a free circulation of creditable paper, as a substitute for money, and by providing a remedy for the holder of such paper in his own name.. It does not follow that a note when overdue, is deprived of its negotiable quality. I think it may still be negotiated, and prosecuted in the name of the holder, but subject to every equitable defence by the antecedent parties, and all other persons who may be affected by it. I am of opinion, therefore, that the note in question was properly excluded.
Kent, J.
This appears from the judge’s report, to be a suit brought for the benefit of the creditors of the plaintiff. His name is used merely to satisfy the forms of law. The suit is substantially between the creditors of Johnson and the defendant; and it is now well understood, that courts of law will take notice of assignments and trusts, and consider who are beneficially interested, and will protect the cestuif que trust.
In giving my opinion, I mean not to question the law, that ■ a bill or note may be negotiated after it is due, and be declared upon as such. (1 Ld. Kaym. 175.) But I approve of the doctrine, and adopt it as salutary and calculated to prevent fraud, as laid down in the cases of Brown Sf Davis, (3 Term, 80,) and Taylor Sf Mather, (3 Term, 83,) that if a bill or note be endorsed after it becomes due, it throws a suspicion on the transaction, and the endorsee must take it, subject to all the equity that existed in favor of the maker of the note, before it was endorsed; (a) and that if there be any atien *62 dánt circumstances of fraud, the endorsee shall " have every1 presumption turned against him. So, in tile present case, the *63 defendant stating generally, that, he purchased the note in the year 1793, it shall be presumed, that he [*55] *64 purchased' it after the 16th January, 1793, the date of the assignment of the insolvent’s estate.
When a note is offered for sale, after it becomes due, and at a discount,, what is the nécessary inference? Most certainly that the maker is insolvent, and if so, his effects and credits ought immediately to enure to the benefit of his creditors, and he be regarded only as their trustee.' The presumption will bo, for so indeed justice would dictate, that the insolvent makes, forthwith, a full and frank disclosure and asr signment of all his property for the payment of his debts. And if,the insolvent do, in fact, make such an assignment, the *65 purchaser of the note in such a case, after the assignment at a depreciated rate for the purpose of a set-off, though he may not in fact, know of the assignment, yet he is properly chargeable with having acted under an implied notice of the assignment. The law infers the notice, being what is termed constructive notice: (2 Fonb. 155.) he accordingly commits a fraud upon his creditors; he1 does an act mala fide; and as Lord Kenyon observed in a case, not very unlike the present, “ It would be very unjust indeed, if one person, who happens to be indebted to another, at the time of the bankruptcy of the latter, were'permitted by any intrigue, between himself and a third person, so to change his situation as to diminish, or totally to destroy the debt due to the bankrupt by an act ex post facto.” (6 Term, 59.)
I accordingly continue in the opinion that was given at the trial, that the note purchased by the defendant, was inadmissible evidence under the plea of payment, and that the defendant must take nothing by his motion.
Benson, J. declared himself to be of. the same opinion.
Lewis, J. That dioses in action, are not assignable, is a very ancient rule of the common law.
The many inconveniences resulting from a rigid adherence to this rule, which must have been sensibly felt previous to the introduction of the equity jurisdiction of the court of chancery, induced the common law courts, at an *early period, to give effect to such transfers, by consid- [*56] ering them in the nature of declarations of trust; the sanctity of legal forms not being thereby violated as the assignee prosecuted in the name of the assignor, by virtue of a power contained in the instrument of assignment. This remedy proved however, in many cases, a very, inadequate one; the lequitable or beneficial rights of the cestuy que trust not being noticed, were ever liable to be defeated by the act of the trustee, or impaired by his debts. When theequity jurisdiction of the chancery became, by the invention of uses, completely established, it soon assumed the almost exclusive cognizance of frauds, accidents and trusts. To make this remedy complete, the party was therefore, in such cases, obli *66 ged to resort to that court; the delay and expense of which induced the common law courts to extend the remedy, by further relaxations, until finally they left to the exclusive jurisdiction of a court of equity, little more than mere technical trusts. The reform, however, has been gradual and cautious, and extended not beyond a refusal to support a payment made to the assignor, after notice to the debtor of the assignment of the debt, until the 19th of Geo. the III. a period at which the obligatory force of English adjudications ■ hád ceased to operate in this country. Satisfied, however,with the principles of subsequent cases, I am content to go as far as they have gone, but am riot prepared to go one step beyond them. It becomes, then, of importance to inquire how far the English courts have gone in noticing equities and trusts, and whether they have done it in any instance, to the prejudice of a perfect right, vested in a third person.
I shall consider, in the order of time, such cases as I have met with, beginning)with that of Fenner & Meares, (2 Black. 1269,) 'which though not precisely in point, since it was there determined, that the legal right as well as the beneficial interest, was in the plaintiff, still looks towards it. Meares had borrowed money of Cox, on respondentia, and by endorsement on. the bond, declared it was not subject to set-off, and that he would pay the principal and interest with-[*57j out *deduction or abatement, to whomsoever it should be assigned by the obligee. An assignment was made for valuable consideration to the plaintiff, who brought asi sumpsit for money had and received ; and the court determined that it was maintainable by force of the endorsement \ though it was admitted, that had the suit been brought in the name of Cox, the defendant might have pleaded a set-off.
The next case is that of Bottomly v. Brooke, 22 Geo. III. the decision- in which was, that where A. gave a bond to EL in trust for C. and at C.’s request, A. might to an action of debt brought on this bond in the name of B. plead the special matter, and set off a demand against C.
The case of Rudge v. Birch, 25 Geo. III. was precisely similar to the preceding.
*67 In Webster v. Scales the only point decided was, that what a bankrupt holds as a trustee, is not assignable by the commissioners; the statute empowering them to assign those things only, which are for the benefit of the bankrupt.
The three cases last mentioned are cited in Winch & Keenley; (1 Term, 619,) in which the only question was, whether the defendant should pay a balance of an account to the plaintiff for the use of his assignee, or to his assignees under a subsequent commission of bankruptcy. The court determined it was not assignable under the commission, within the terms of the statute of James; and that the plaintiff of course should recover.
Of all these cases, not one goes so far as to notice the beneficial interest of a cestuy que trust to the prejudice of a perfect right vested in a third person, a consequence unavoidable in the present case, if the decision at nisi prius be supported. Their utmost extent is that in an action by a trustee against a creditor of a cestuy que trust, the defendant may plead the special matter, and set off the demand against the person having the ‘beneficial interest in the suit. (See 4 Term, 34.) But no case, I am persuaded, can be adduced, in which it has been permitted to a trustee plaintiff, to ’preclude a defendant from a set-off, by alleging that [*58] he prosecutes for the benefit of another, when such defendant was ignorant of the trust, at the time of giving the . credit • for his debt to the trustee, may have been the sole inducement to the credit, and have led him to purchase his paper, when perhaps no other person would.
Legal decisions, on commercial questions particularly, should ever be founded on the broad basis of general principle, and there is no better test of the soundness of such principle, than its applicability to every similar case. The decision at nisi prius will be found to be, that a defendant shall in no case set off where the plaintiff prosecutes for the benefit of creditors; for the particular circumstances of this case, when examined, can have no influence. To purchase a note in the market for less than its nominal value, is neither usurious nor fraudulent; for its nominal may not be its real value. *68 To purchase it either for the purpose of compelling payment from the maker, or of paying him a debt/with it by- way of set-off, is a perfectly fair negotiation, and not against any law ■ of civil or moral obligation. Stripped of these two circumstances, it stands barely on the principle above stated. ■ Now if this- principle be a sound one, it'will apply with equal force to the payee as to the endorsee of a note, nor can it vary the Casé Whichever-of the debts be first contracted. If Johnson-then, had given Sullivan his note, and before it became due Sullivan had sold property-to Johnson, who afterwards assigned his debts for the benefit of his creditors, Sullivan could ' not set off such note in a suit brought against him by Johnson for their benefit, even though the possession of the note had been the sole inducement of the sale. This is a doctrine which neither law nor equity will be found to warrant. It will apply as well to the case of an-assignment for the benefit of a particular creditor, as to an assignment to one for the benefit of all the creditors: and thus put- it in the power of a-debtor to .compel one creditor' to pay the other, or a number of creditors to contribute to the payment of one whom he, [*59] may choose to prefer. Executors and ^administrators, ■ also, will be embraced by the rule, for they represent their principals, and are trustees for their creditors. Nor will the generality of the assignment, it being for the benefit of all-, the creditors of the plaintiff, vary the case, unless it can be ■ shown, that a court of common law has the power to declare,. that on every such voluntary assignment, creditors shall be' compelled to waive all advantages, and to receive their divi/ dends pari passu.
'"A circumstance of ho little weight on the present occasion: is, that the set-off was not inconsistent with the nature of the trust. The assignment was for the benefit Of the creditors,, and the defendant was a creditor, and having a lien too,'or security which could not be taken from him. On the whole, if the note in question was-the note of Johnson which had. not been discharged, his liability to pay it would exist, notwithstanding the assignment of his property, and if a suit would Me on it, I cannot see why it might not be pleaded as pay *69 ment, and being a negotiable paper, .why the endorser should not be entitled to all the advantages of the original payee. But it was insisted, that its negotiability was at an end, as it had been purchased when it was overdue, and the case of Beck v. Robley, (1 H. Black. 89, n.) and Brown v. Davis, (3 Term Rep. 80,) were relied on. The first of these cases, which is subjoined in a note to the case of Bacon v. Rearles, has so mány suspicious circumstances about it, and is so subversive of principle, that I do not think it much to be relied on. It is cited, as of Trinity term, 14 Geo. III. and is directly the reverse of the decision in Louviere v. Laubray, (10 Mod. 37,) nor is it to be found in any reporter of that time. The last circumstance is the more extraordinary, as, if truly cited, it is an important and leading case. The amount of it is, that if a'bill after acceptance and non-payment, comes back to the hands of the drawer, it ceases to be a bill, so that an action cannot be sustained on it against the acceptor. If this be true, then the resemblance between the acceptor of a bill and ■the maker of a noté, and the drawer of a bill and the endorser of a note is destroyed, where the similarity of feature is supposed to be strongest; for the maker of the note [*60] is the person responsible in the last resort, and the acceptor of a bill will not be so. The endorser of a note who takes it up, can maintain an action against the maker, but the drawer óf a bill under like circumstances, will not be able to sustain an action against the acceptor. The well established maxim, also, that an acceptance by a drawer, is prima facie evidence of his holding property of the drawer’s to the amount of the bill, will be shaken. But give the authority its greatest latitude, it cannot reach the present case, for though the note may have lost its negotiability, it certainly is still a.note, for which the maker is liable, unless it shall appear to have been discharged.
The case of Brown v. Davis is not more applicable than that of Beck v. Robley. The extent of it is, that the endorsee of a note overdue, shall stand in the place of the original payee, and be subject to all the disadvantages of his situation; such as the defendant being permitted to show, that the note *70 was paid, which was the ground of defence in that case, or that it was niade on an illegal consideration, as in the case of Banks v. Colwell there cited. 'In the principal case, Mr. Justice Buller, speaking of a note overdue, makes this emphatic observation, “ I do not say, that by law it is not negotiable.” And again, in the ■ case of Taylor v. Mather, (3 Term Rep. 83, n.) in a note subjoined, he says, that “ it has never been determined, that a bill or note is not negotiable after it becomes due.”
A further remark, which has great weight with me, is, that all the decisions on this subject are in favor of defendants, and none in favor of trustee plaintiffs ; and with good reason, because, in the former casé, the strict rules of law are made to yield to substantial justice, without fraud or colliú sion ffor the plaintiff may put the fact of a trust in issue, and the defendant, if he cannot substantiate his plea,,'must fail. But in the latter case, fraudulent and collusive assignments may be set up, whenever a man wishes to avoid the . [*61] payment of his just *debts, and a defendant be thereby precluded from a set-off, however righteous may be his demand.
Some observations were made, in the course of the argument, against granting the effect, of the present motion, on the suspicious appearance of the endorsement on the note, which were., in my opinion, irrelevant, as the note was not in evidence. • For, notwithstanding their force, and the effect they would probably have produced on the mind of the jury, they were questions exclusively for their decision. The consequence of a right decision of this question having appeared to me important, 1 have examined it with the more attention, and have not a doubt that a new trial ought to be awarded.
Lansing, Ch. J.
To determine whether the note ought ,to have been received, it is requisite to .examine, 1st. The effect of the endorsement of the note after it became due;
2d, Whether the assignment made by the plaintiff, varied the relative situation which existed between the plaintiff and the defendant.
*71 It seems to be settled in the English courts, that the endorsement of a note after it becomes due, shall not exempt the holder from any disability which the payee as intermediate indorser would be exposed to, if it had remained in the hands of either. The endorsee after it is overdue takes it at his own risk, and relies not solely, but principally, on the credit of the endorser from whom he receives it; for the endorser retains the right of resorting to the maker or prior endorsers with the like effect, as he might have done before the note became due, as long as they cannot avail „ themselves of some legal ground of discharge, arising from the transactions between the parties prior to the last endorsement. This I take to be the extent of the doctrine assumed by the English courts, and it is such as appears to me to be well warranted by the soundest legal principles, applied to the nature of negotiable paper.
* Judge Duller, who laid down the broadest principles [*62J of any of the judges, who gave an opinion in the case of Brown v. Davis, observes, “ that if a note is overdue, though he does not say it is not negotiable, yet it is out of the common course of dealing, and does give rise to suspicion. Still stronger ought that suspicion to be, when it appears from thé face of the note, to have been noted for nonpayment.” Upon this ground it was, that in another, case tried before him, he said, “ that the defendant, who was the maker, was entitled to set up the same defence that he might have done against the original payee. A fair endorser can never be injured by this rule, for if the transaction be a fair one, he will still be entitled to recover.”
In the case of Taylor v. Mather, (3 Term, 83,) the note was endorsed after it was due, and there were many circumstances, which led the court and jury to conclude, that it was fraudulently obtained ; whereupon a verdict was found for the defendant. Upon a motion for a new trial, it was refused on the merits, and Mr. Justice Duller said, “it never has been determined, that a bill or note is not negotiable, after it becomes due; but if there are any circumstances of fraud in the transaction, and it comes to the hands of a plaintiff *72 by endorsement after it is düe, I have always left it to the jury, upon the slightest circumstances, to presume the endorsee was acquainted with the fraud.”
I know of no cases which have shaken these principles, and they appear to me fully to make out, that the negotiable quality of the note is preserved, though it is" overdue; but with less advantage to the holder than it would have possessed, had he acquired it before it became due.
The consideration of the second point would be of consequence, if it necessarily led the court into the inquiry whether they could, on sound legal reasoning, adopt the latitude of construction assumed by the English courts, after our revolution, against the common law principle, íhat' a chose in action is not assignable. This, however, seems to be one of those cases' which if tested by the [*63] *whole course of the English adjudications, would not be materially affected by them.
The case of Winch v. Kelly, (1 Term, 619,) has been cited, as somewhat analagous to the present casé: but that' was determined on the construction of the bankrupt laws f it was decided on the ground, that the debt assigned by the bankrupt prior to the bankruptcy, was held by him as trustee,’ and so did not pass under the commission ; and Mr. Justice Ashhurst remarks, that it would be productive of great expense to send the parties to the other end of the hall; and whenever the court have seen, that the justice of the case is clearly with the plaintiff, they have not turned him round. The justice of this case does not appear to me to be clearly with the plaintiff. Set-offs are productive of the most beneficial and equitable effects. They tend to prevent a multiplicity of suits ; they adjust the adverse claims of the contending parties, and yield the balance to the prevailing one; thus, affording substantial justice to both, without permitting the forms of law to prevent it. It is a matter of no moment here how the right of set-off was acquired, if it was bona fide.
By suffering the doctrine of beneficial trusts to be introduced to the extent contended for; and particularly by apply *73 ing it to the cases of mutual dealings, it appears to me that great inconveniences would result, and new rules ought, perhaps, to be devised to prevent them; for, if a plaintiff can, by the assignment of a chose in action, acquire a beneficial interest, capable of being enforced in a court of common law, the defendant must possess a similar power. If, then, a plaintiff brings a suit on a demand for which he is entitled to recover, and the defendant, instead of depending upon a set-off originating from mutual dealings between them, may resort to a creditor of the plaintiff, obtain an assignment from him, and plead it by way of set-off the court, instead of settling the actual dealings subsisting between the parties to the suit, may be involved in all the intricacies of controversies between others, not appearing as parties. This is now the *case, in a limited degree, as far as respects [*64} negotiable paper; but from the principles which govern cases of that kind, many objects of controversy are avoided which must inevitably be connected with other transactions. This is one of the inconveniences that occurs to me on the occasion; others, I am apprehensive, would be presented in practice. I am inclined to think, that there are no cases prior to our revolution, which carry the doctrine of trusts farther, as cognizable' in courts of law, than to the cases where the trust was coeval with the debt.
That the note was, in this instance, endorsed when it was overdue; that it was purchased at an undervalue, are circumstances which cannot, in any event, legally affect the defendant’s right, as it is not ascertained whether he obtained the note before, or after the assignment by the plaintiff to his creditors. The purchase is stated to have been made, some time in the year 1793, and the assignment on the 16th January in the same year.
If the defendant acquired the note previous to the assignment, I suppose, no doubt can exist, that he ought to have the benefit of it as a set-off. If he acquired it afterwards, I have given, my reasons why I doubt the right of the plaintiff to preclude him from it.
t[pon the whole, I am of opinion, that the note ought to ' *74 have been given in evidence to the jury, and that, on that ‘ ground, a new trial ought to be awarded.
Rule refused,

 See Wardell v. Eden, infra, vol. 2, and note.

 “ After a bill or note is due it comes disgraced to the endorser and it is his duty to make inquiries concerning it. If he take it, though he gives a full consideration for it, he does so on the credit of the endorser and subject to "all the equities with which it may be encumbered.” Per Lord Ellenborough, in *62 Tinson v. Francis, 1 Campb. 19, and whatever will tie a defence against the giver will be a defence against the receiver. Steph. N. P. 860; Tucker v. Smith, 4 Greenleaf, 415; Andrews v. Pond, 13 Peters, 65. Thus where a bet was laid after the poll was closed on the event of the election for governor, and the party gave his negotiable note for the amount of the bet payable in thirty days, which was deposited with a stakeholder, and afterwards delivered to the winner, who endorsed it, after it became due ; it was held that the endorser took the note subject to the defence existing against it in the hands of the original payee, and that the note being given for such a wager was void. Lansing v. Lansing, 8 Johns. R. 454. But if the maker confess judgment on á note the consideration of which is illegal, to the endorsee after it fall due, the court will hot set aside the judgment to let in such equitable defence, espé- " cially where the original parties are in pari delicto. Sebring v. Rathbun, infra, 331. So, when the maker had a set-off against the payee of a note endorsed after it became due, it was held that the set-off should be received in an action by the endorsee against'the maker. O’Callaghan v. Sawyer, 5 Johns. R. 118. See further Hendricks v. Judah, 1 id. 319; Lansing v. Gaine, 2 id. 300; Ford v. Stewart, 19 id. 342; Havens v. Huntington, 1 Cowen, 387, 396; Jones v. Caswell, infra, vol. 3, p. 29.
In Massachusetts, if a person takes a note overdue, or with knowledge of equitable defences or under circumstances which ought to have excited suspicion, he takes it subject to equities. Ayer v. Hutchins, 4 Mass. R. 370, 372; Holland v. Makepeace; 8 id, 418, 422; Sargeant v. Southgate, 5 Pick. 312, 316, 317. Thus the maker of a note endorsed after dishonor, may have the benefit of a set-off against the payee, which accrued before .notice of the trans- > fer. Sargeant v. Southgate, ut sup.; Ranger v. Carey, 1 Metcalf, 369; or of payments in whole or in part before the transfer, Stevens v. Bruce, 21 Pick. 193; Hemmenway v. Stone, 7 Mass. R. 58; Gold v. Eddy, 1 id. 1; Baker v. Wheaton, 5 id. 509, 512; American Bank v. Jenness, 2 Metcalf, 288: or fraud in its inception, Sylvester v. Crapo, 15 Pick. 92: or illegality, Ayer y. Hutchins, ut sup.; or want or failure of consideration, Thompson y. Hale, 6 Pick. 259; or that by the fault or fraud of the endorser the collateral security given for the note did not bring enough to pay it Howard y. Ames, 3 Metcalf, 308; Potter v. Tyler, 2 id. .58: see Porter v. Blood, 5 Pick. 54, 58. Contra, Jones v. Kennedy, 11 Pick. 125; or a submission to arbitration and-an 'award thereon; Webster v. Lee, 5 Mass. 334; or a discharge under an insolvent law before the transfer valid against the endorser, Baker v. Wheaton, 5 Mass. 509; Watson v. Bourne, 10 id. 337, 338; or that the payees of a bill had agreed to repay the drawer the amount of. the bill if paid, or return it without" charge if not paid, Wilson v. Holmes, 5 id. 543. The law of France in,a great measure récognizés the like distinction between endorsements before, and endorsements after the maturity of a bill or note. In the latter casé, all' the equities between the other parties are not only let in, but even those of the *63 creditors of the endorser who have before the endorsement and after the maturity levied attachments of the debt in the hands of the debtor. Story on Bills, § 221. Pardessus, Droit Comm. T. 2, art. 351, 352. Chitty on Bills, ch. 6, p. 242, n. c, 8th edit. 1833. It seems, however, in Scotland, the endorsement of a bill which is overdue does not affect the endorsee with the equities between the original parties, unless there are some marks of dishonor on the bill. Story on Bills, 224, n. 1. 1 Bell. Comm- B. 3, ch. 2, § 4.
But the equities referred to in the general rule, are only those that attach to the particular bill or note and such as would be available, as between the parties, to control, qualify or extinguish any rights arising thereon, and not such as grow out of other independent transactions between them. Bayley on Bills, 161,162, (5th edit.) Burrough v. Moss, 10 Barn. & Cress. 563. Story on Bills, 208, n. 3, 243, 244.
It has been held, however, that a man who takes a bill after it is due, will stand in the same situation as if he had taken it before, if he held it for value’ before it was due and it be redelivered to him for the same value afterwards : ' as if a banker’s customer deposite a bill with him for value before it is due, and again deposite it with him- for value after it is, dishonored. Bosanquet v. Dud-man, 1 Stark. 1.
And though a man, who takes a bill after it is due, takes it subject to the objections to which it was liable in the hands of the person from whom he took it, he is not subjected to every description of evidence to which that person would be liable. Colleridge v. Farquharson, 1 Stark. 259. Therefore though the entries in that person’s books, if made at the time of passing the bill, and accompanying that act might be evidence against him, yet entries which cannot be proved to have been so made and might have been made afterwards are not. Crossly v. Hane, 13 East, 498.
The question has frequently arisen when a note payable upon demand is to be deemed out of time, so as to subject the endorsee to every defence existing at the time it was negotiated. Such a note is obviously pot open to the same suspicion as one overdue, and therefore it has been held, in England, that without evidence of payment having been demanded and refused, it is not to be considered as such. Borough v. White, 4 Barn. & Cress. 325 : vide Goodall v. Ray, 4 Dowl. P. C. 76. From the nature of the case, however, there can be no precise time within which such a note is to be deemed dishonored. Presentation for pajunent should be made within a reasonable time: Field v. Nickerson, 13 Mass. R. 131,137,138; Stockbridge v. Damon, 5 Pick. 223; but what constitutes such time is a question of law; Tindal v. Brown, 1 T. R. 168; 2 Caines’ R. 372, per Kent, J., depending upon the peculiar circumstances of the case. Such a note negotiable two years, Loomis v. Pulver, 9 Johns. R. 244; or eighteen months, Furman v. Haskins, 2 Caines’ R. 369; a little more than eleven months, Sylvester v. Crapo, 15 Pick. 92; Hemmenway v. Stone, ut sup. or ten months, Nevins v. Townsend, 6 Conn. R. 5 ; *64 eight months or six months, Thompson v. Hale, 6 Pick. 259—see Clark v. Linch, 10 Mass. E. 51, American Bank v. Jenness, ut sup., Ayer v. Hutchins, ut sup.; less than three months, Stevens v. Bruce, 21 Pick. 193, or two months and a half after its1 date, Losee v. Hunkin, 7 Johns. E. 70, has been held so far out of time as to amount to constructive notice ; to the endorsee, of the equities existing between the parties. But where such a note was transferred five months after its date ; and there were several payments endorsed prior to its transfer, one of them but a few days (21) before, Sanford v. Nickles, 4 Johns; E. 224, and another was transferred within one month from date, Ranger v. Carey, 1 Metcalf, 369, and another seven days'from date, Thurston v. Mc-Kown, 6 Mass. E. 428, the times were held to be reasonable and the defences against the endorsee were shut out. It is respectfully submitted to the judgment of the profession, that the true test whereby to determine if such a note is out of time, is whether from the modes of business relating to such paper at the particular place where it was negotiated, there was any thing reasonably suspicious in its remaining unpaid at the time of negotiation. In many parts of the country these notes constitute the most common security for money lent, where the amount is not large, and they are consequently kept alive for years. In those parts such a transfer, though long after due, by itself and without the aid of any other fact, would not arouse caution. Therefore the endorsee would be faultless in case of an existing equity between the maker and the endorser. In such a case the maker would generally be chargeable with laches for not procuring a settlement of the equity affecting paper which he knew to be in the market and liable to be taken innocently by the endorsee. In other parts their use is limited, they are rarely employed as securities, and in proportion to the length of time they are unpaid, confidence must be impaired'in their validity. To measure both cases by a similar time would be unjust. To determine a specific time for every case would be impracticable. It is apprehended therefore, that whether there is any thing reasonably suspicious in its remaining unpaid during the lapse of time in question, taking into consideration the effect of such lapse to create suspicion at the place where the transaction takes place, must constitute the true test.