The Chancellor.
The bill in this cause was filed to restrain an administrator with the will annexed from submitting a claim against the estate of the testator to the decision of arbitrators. The testator left two children, the wife of the complainant, and Daniel Moore, jun., the defendant, each of whom is entitled to a moiety of the estate after the payment of debts. Crum and Moore were appointed executors; but being unable to settle the estate, they were, by consent, both removed from the executorship, and Thatcher was appointed administrator. The debts have all been paid, (with the exception of a claim of Moore for over twenty-three hundred dollars, which is disputed,) leaving in the hands of the administrator about fourteen hundred dollars. To one half of this sum, if Moore’s claim is not allowed, the wife of Crum is entitled. If the claim of Moore is allowed, the estate is insolvent, although, with his assent, the other creditors have all been paid in full. The whole controversy, therefore, is between the complainants, who claim one half of the funds in the hands of the administrator, and Daniel Moore, who claims the entire fund as the creditor of the estate. The administrator is a mere trustee, having no interest whatever in the result.
The interference of the court was asked, and the injunction was allowed, on three grounds, viz.
1. That the agreement to submit to arbitration was made by the administrator without the consent and against the will of the complainants, who alone were interested to resist the claim.
*439 2. That the agreement was made by collusion between the administrator and the claimant.
3. That two of the arbitrators selected were not impartial, owing to the relations subsisting between them and the parties to the controversy.
The first ground raises the inquiry, whether the administrator will be restrained, under the admitted circumstances of the case, from submitting the matter in controversy to arbitration, without the consent and against the will of the complainants, in the absence of fraud or collusion on the part of the administrator, or of partiality or other disqualification on the part of the arbitrators.
It is insisted, by the administrator, that he has an absolute right, by virtue of his office, irrespective of the interests or wishes of those interested in the estate, to submit any claim against the estate to arbitration. That an administrator may submit claims against the estate to the award of arbitrators, will not, as a general rule, be questioned. So, as a general rule, the plaintiff in an action at law may release the claim, or submit to a reference, or enter satisfaction of the judgment. But if he be in fact the mere trustee of another, having the legal title, but no beneficial interest in the matter in controversy, the court will control his action, and protect the interest of the cestui que trust. The books are full of cases upon this subject. Legh v. Legh, 1 Bos. & Pul. 447; Winch v. Keeley, 1 T. R. 619; Henry v. Milham, 1 Green 266; Johnson v. Bloodgood, 1 Johns. Cas. 51; Warded v. Eden, 2 Johns. Cas. 121; 1 Johns. R. 531, note; Littlefield v. Storey, 3 Johns. R. 425; Briggs v. Dorr, 19 Johns. R. 95; Timan v. Leland, 6 Hill 237; Jackson v. Blodget, 5 Cowen 202.
And the courts of common law exercise this power of protecting trusts and equities, though strictly a branch of equity jurisdiction, as essential to the ends of justice.
The real question, then, is not whether an administrator, as such, has the right of submitting to arbitration claims against the estate; but whether circumstances may exist, *440 and whether they do exist in this case, which will warrant the court in restraining the administrator in the exercise of' his admitted power, where it is attempted to be exercised without the consent and against the interest of those really interested in the matter in controversy.
■ In the ordinary course of administration, where the rights of various parties are involved, the court would reluctantly interfere with the discretion of an administrator to refer a controversy to arbitration, if he chose voluntarily to incur the hazard of so doing. But there are no considerations of public policy which can in any wise interfere with the discretion of the court where the estate is virtually settled, and the administrator occupies the attitude of a trustee of the fund claimed by two contending parties.
It is certainly a familiar doctrine, that an administrator may lawfully submit-claims against the estate to the award of arbitrators. So one man may submit for another — a husband for his wife — a parent for his child — a guardian for an infant — a trustee for his cestui que trust. Caldwell on Art. 12.
And in all these cases the party to the submission is bound by the award, and may be compelled to perform it, or may enforce performance against the other party. But the party really interested, the wife, the infant, the cestui que trust, are not bound by thó submission, nor can their rights be concluded by the terms of the award. Even in the case of a submission by an administrator the parties interested in the estate are not bound. And if, upon the submission of a debt due the estate, the arbitrators award less than is really due, the administrator shall answer for the full amount of the debt. Yard v. Eland, 1 Ld. Raym. 369; Com. Dig., “Administration,” I, 1; 2 Williams on Ex’rs 1533; Bac. Ab., “Executors,” L. 1.
' It. amounts to a devastavit by the administrator to the extent of the loss.
It may be affirmed, as a universal principle, that a trustee will not be permitted to prejudice the rights or interests of his “ cestui gue- trust ” by a submission to arbitration. If the *441 submission be made without the approbation of the cestui que trust he will not he bound. It is an utter subversion of the whole theory and policy of arbitrations, that a party’s rights should he submitted to the decision of arbitrators not of his own choosing. He is bound by the award, because it is a decision by a tribunal of the party’s own choice, to whose judgment he has voluntarily submitted the adjudication of his rights. So far as I am aware, either under the common law or law of this state, no case can he found in which a party has been, or can be compelled to submit to arbitration against his will, or in which he is bound by the award of arbitrators not of his own choice. He is entitled, as of right in all other cases, to have his rights determined by the appropriate judicial tribunals of the state. It is upon this ground that courts of equity will not decree the specific performance of an agreement to submit to arbitration, deeming it against public policy to exclude from the appropriate judicial tribunals of the state any persons who in the ordinary course of things have a right to sue there. 2 Story’s JSq. Jur., § 1457.
But it is urged that, as the cestui que trust is not bound by the award, and may look to the trustee for indemnity, it cannot operate to his prejudice, and there can therefore be no ground for the interference of this court by injunction. The trustee, it is urged, remains personally liable, as though the award had not been made. It cannot escape observation that this is a remarkable ground to he taken by the trustee himself. It is very usual for trustees and all persons acting in a fiduciary capacity to decline any course of action which may make thorn personally responsible, and to resort to the direction of some judicial tribunal for protection; but here we find the trustee insisting oil his being permitted to submit to arbitration on the very ground that he will thereby render himself liable.
But aside from this suggestion, it is obvious that although the cestui que trust is not bound by the award, it may, and in many cases must operate to her prejudice. It is competent *442 evidence to shield the administrator from the charge of a devastavit until the award is shown to be erroneous. It will completely shift the burthen of proof between these contending parties. In an action brought against the administrator by the claimant, he must show that his claim is well founded. But in an action by the legatee against the administrator, for her share of the estate, she must show that the administrator has paid a larger amount than is justly due. The complainant, moreover, will be subjected by the arbitration to the burthen and expense of a controversy which cannot be decisive of her rights.
I am of opinion, therefore, that equity will restrain by injunction a trustee from submitting to arbitration a question in which the cestui que trusts alone are interested without their consent and against their will. No discreet trustee, acting in good faith, would venture or desire to do it. The restraint would operate for his protection as well as that of the cestui que trust.
. Aside from the general principle, there are circumstances in this case which render it peculiarly proper that the administrator should be restrained from proceeding with the arbitration. The very nature -of the controversy renders it an unfit matter to be disposed of in a tribunal not sufficiently familiar with the principles of law and equity to administer either effectually in complicated cases. The claim is made by a son against the estate of his father for services for a period of more than twenty years. He has always resided with his father and upon the father’s farm from the time he was of age. He alleges, in his answer, that although his claim is thus ancient, no part of it is barred by the statute of limitations. It is obvious that this state of facts must of necessity give rise to questions of doubt and difficulty peculiarly proper to be disposed of by the constituted tribunals of justice.
' The administrator has obviously assumed an attitude hostile to the interests of the complainants. This is fully evinced by the admissions and allegations contained in the *443 answer. He alleges that he entered into the agreement to arbitrate the claim of Daniel Moore, junior, against the estate with the conviction that Daniel Moore, junior, had just claims for some amount against the estate, though for what amount he does not pretend to say; that his sole object in accepting the letters of administration was to adjust the difficulties existing between the complainants and Daniel Moore, junior, respecting the claims of said Moore without “ lawing,” and to prevent the whole estate from being squandered by litigation, which he believes to be the sole desire of the complainants ; and that they only oppose the said arbitration because they well know that thereby all the said claims will be fairly and finally settled, and that no further chance of litigation will be allowed them. He admits that he accepted the letters of administration, at the solicitation of the complainants’ attorney and of Moore, with full knowledge of the nature of the controversy; that afterwards, without apprizing the complainants or their counsel of his purpose, and without taking counsel of them or of any other attorney as to the propriety of his course, or of its consistency with the rights of the complainants, or with his own duty in the matter, he entered into an agreement with Moore to submit the matter to arbitration. Ho admits that the preparation of the bond was intrusted to Moore’s counsel, and that after the arrangement was completed, and not before, he apprized the complainants’ counsel of the stop he had taken, and requested him to furnish the names of the complainants’ witnesses, and to assist him in making a legal and proper defence before the arbitrators. These statements of the defendant’s answer sufficiently evince his attitude toward the respective parties. It is not surprising that, with a knowledge of these facts, the counsel of the complainants should have utterly refused to appear before the arbitrators or to have any participation in the proceedings of the administrator. Nor is it difficult to anticipate what the result of the arbitration will be if conducted under such auspices. The whole tone and spirit of the answer might well have been prompted, and its purport *444 dictated, by the claimant himself. He will scarcely find a stronger or a more willing witness to aid him in his claims upon the estate than the administrator to whose care the estate is intrusted, and who is bound to protect the rights of all the parties in interest. The allegations and charges of the answer are rather those of a party litigant or a partizan than of a trustee bound to protect the interests of his cestui que trusts. Whether this course is prompted by honest but mistaken views of duty and of the complainants’ rights, or of collusion with the defendant, Moore, is quite immaterial as to its effect upon the rights of the complainants. It admits of no justification, and it would be a gross wrong to the complainants and a mockery of justice to permit the arbitration to proceed under such circumstances, however just and impartial the arbitrators may be.
No trustee should be permitted thus to deal with trust funds against the known wishes of his cestui que trusts and to the certain prejudice of their interests. I entirely concur in the sentiment of the senior counsel of the complainants, that it is a matter of surprise that any honest, honorable, and fair man should be willing to pursue such a course. The administrator may be correct in his views, that the claim of Daniel Moore, junior, against the estate is just, and that the motives of the complainants are corrupt, and their conduct fraudulent in resisting the claim. Upon that point no opinion is designed to be expressed. But it is very clear that those are questions which the complainants are entitled to have impartially tried and fairly decided; that the administrator has no right, whatever may be his views of the matter, to prevent a fair and impartial trial, and that this court is bound to use its power to secure, as far as may be, that end.
The motion is denied, but without costs. No fraud is imputed to Moore, the defendant, and I am willing to believe that the conduct of the administrator may have been prompted by mistaken views of his duty and of the complainants’ rights, and am not therefore willing to condemn him in costs.