IN ERROR:
........
ALBANY,
March, 1815.

GEORGE CAINES,

*against*

JAMES BRISBAN AND JOHN BRANNAN,

*Plaintiff in Error,*

*Defendants in Error.*

CAINES
v.
BRISBAN.

GEORGE CAINES,

*against*

RICHARD ALSOP AND OTHERS,

*Plaintiff in Error,*

*Defendants in Error.*

IN ERROR, from the supreme court.

These were actions of *assumpsit*, in both of which the pleadings were similar, and which were argued together in this court.

The declarations, in both cases, were for goods sold and delivered, to which the defendant below pleaded,

1. *Non assumpsit.*

2. That the goods, in the declaration mentioned to have been sold to the plaintiff, if any were so sold and delivered, were certain law books, and other printed works and publications, and that before, and at the time of the selling and delivery thereof, if any were so sold and delivered, and before, and at the time of making the promises, &c., one *Isaac Riley* carried on the trade and business of a bookseller, by the above plaintiffs, under the name, style, and firm of *Brisban & Brannan*, (*Alsop, Brannan, & Alsop*,) but, in truth, for the profit and on account of *Riley*, and at his risk; that whilst *Riley* so carried on the trade of a bookseller, he, by the above plaintiffs, sold and delivered the books; and that after the several supposed assumptions, &c., and before the filing of the bill in this suit, *Riley* was indebted to one *Thomas Fairchild*, or pretended so to be, in some considerable sum of money, and being so indebted, or pretending so to be, *Riley*, by *John Brannan*, his agent, as, and under the name of, acting attorney for the firm of *Brisban & Brannan*, assigned the demand against the defendant to *Thomas Fairchild*, to be collected by *Thomas Fairchild*, in the name of the plaintiffs, but, in truth, for, and on account, and in payment of the debt due to *Fairchild* from *Riley*, and to enable *Riley*, under the

In an action of assumpsit for goods sold, the defendant pleaded that one A. carried on business under the name of the plaintiff; that the plaintiff, as agent of A., sold the goods; as such agent assigned the debt of the defendant to a creditor of A., and then pleaded a set-off against A.: the plaintiff replied that A. did not sell the goods: the replication was held sufficient.

*It seems* that a set off cannot be pleaded, but notice of it must be given under the general issue. It seems that a set-off is not restricted to the parties on the record; but if the plaintiff be only an agent or trustee, the defendant may set-off a debt due from the principal or *cestuy que trust.*

A plea, stating that A., the person beneficially interested, being an insolvent, within the act of *April,* 1811, by the plaintiff, his agent, (under whose name A. sold the goods, to recover the price of which the action was brought,) assigned the debt due

from the defendant to B., in preference to the other creditors of A., is bad; such assignment being valid under the statute.

names of the plaintiffs, to receive from the defendant the amount, benefit, and advantage thereof: and that the bill filed in this suit was filed by *Fairchild*, in the names of the plaintiffs, for the purpose of enabling *Fairchild* to pay and satisfy his demands, or some portion of them, against *Riley*, who is the person that is really, ultimately, and beneficially interested in this suit; and that before the assignment to *Fairchild*, and before filing the bill, *Riley* was indebted to the defendant in a large sum of money, to wit, &c., for work and labour, &c., for money lent and advanced, &c., on an account stated, &c.

3. That after the sale, &c., and promises, &c., *Riley* became solely interested in the whole of the supposed right, title, debt, due, or demand of the plaintiffs against the defendant, and being so solely interested, he, *Riley*, whilst he continued so solely interested therein, on the 10th of *January*, 1812, became an insolvent debtor, within the true intent and meaning of the act of the 3d of *April*, 1811, entitled " An act for the benefit of insolvent debtors and their creditors." That after *Riley* became insolvent, and before the repeal of the act of the legislature, and whilst *Riley* continued to claim to be so solely interested in the whole of the supposed right, title, debt, due, or demand of the plaintiffs, on the 18th of *January* aforesaid, *John Brannan*, one of the plaintiffs, in the character, and by the description, of acting attorney for the firm of *Brisban & Brannan*, the plaintiffs, but, in truth, by the direction, and in the behalf, and on account of *Riley*, assigned the right, &c., to *Fairchild*, to be by him collected in the names of the plaintiffs, but, in truth, on account of *Riley*, and in part payment and satisfaction, when collected, of a debt, or pretended debt, due from *Riley* to *Fairchild ;* and that it was so made to pay a debt due to *Fairchild*, in preference to other debts due from *Riley*, and in contemplation of applying for the benefit of the act, when he was an insolvent debtor within the true intent and meaning thereof, and with intent to defraud his other creditors, of which *Fairchild* had notice, he, *Fairchild*, not being a creditor who had, before the passing of the act, imprisoned, impleaded, or prosecuted *Riley*, on any civil process issuing out of any court within and under the authority of this state, for debt, or any contract express or implied ; that, after the assignment, *Riley*, according to due form of law, at *Flatbush*, in the county of *King's*, presented a petition to *William Furman*, first judge of the court of common pleas of that

IN ERROR.
.......
ALBANY,
March, 1815.

CAINES
v.
BRISBAN.

county, praying that his estate might be assigned, and he discharged from his debts, according to the provisions of the act of the 3d of *April*, 1811; whereupon such proceedings were had, that the estate of *Riley* was, in due form of law, assigned to certain assignees, and all the right of the plaintiffs, and of *Riley*, in the supposed debt against the defendant, became vested in law in his assignees; and *William Furman*, by a discharge under his hand and seal, bearing date the 1st of *May*, 1812, discharged *Riley* from all his debts; and that the bill filed in this suit was filed by *Fairchild*, in the name of the plaintiffs, to enable *Fairchild* to collect the supposed debt, and apply the same in paying and satisfying the debt of *Riley* to *Fairchild*, in preference to the other creditors of *Riley*.

To the second plea the plaintiffs replied, that *Isaac Riley* did not, by the plaintiffs, under their name, style, and firm, or otherwise, howsoever, sell and deliver to the defendant the goods, books, &c., in manner and form, &c.

To this replication the defendant below demurred, and assigned for causes: 1. That the replication does not traverse, or confess and avoid the matter alleged in the plea, nor answer it but by way of inference and argument only. 2. Because the matter set forth in the replication is matter of evidence, and no material issue can be taken thereto. The plaintiffs below joined in demurrer.

The plaintiffs below demurred, generally, to the third plea; and the defendant joined in demurrer. The court below gave judgment for the plaintiffs below on both demurrers, and the issue on the first plea having been tried, the jury gave a verdict for the plaintiffs below, and final judgment was entered thereon in the usual form.

[See the decision of the supreme court, and the reasons assigned, in 10 *Johns. Rep.* 45. 396.]

The following are the reasons offered by the plaintiff in error for reversing the judgment:

1. Because, by the common law, assignments of debts, or *choses in action*, are not permitted, and are recognised at law only to avoid sending the assignee into equity; in consequence of this, assignment of debts, as being mere equities, are, when recognised by law, governed by equitable principles. By these principles, notice to the debtor is indispensable, to take away from him any of his rights against his creditor, the assignor.

IN ERROR.
........
ALBANY,
March, 1815.

CAINES
v.
BRISBAN.

By the same principle, until notice of the assignment of a debt is given to the debtor, it is, as to him, as if it had never been made; and, until the time of notice given, he deals with his creditor on the same terms and footing as if there were no assignment; that the consequence of this is, that the debtor's right of setting off the amount of any credits given by him to his creditor, continues to the time of *notice of the assignment*, and is not regulated, or governed, by the time of the assignment made, (or its date,) but by the time of the *notice* of assignment *given to him.*

2. Because, by the first decision of the supreme court, the right of set-off, which a debtor has, under the statute, against his creditor, will be taken away by a secret assignment of his debt, without notice, when he may have been dealing with his creditor, on the *faith of paying that very debt*, and without which faith he would not have dealt at all.

3. Because, by the same decision, a wide door is opened to fraud and deceit, especially in cases of insolvency, like those before the court; for a trader, particularly, might, (if a secret assignment of a debt, without notice, be good against the set-off of subsequent creditors,) by assigning the debts due to him as soon as contracted, receive payment of the whole from his unsuspecting debtor, who might be obliged to pay the same debt over again to the assignee, and then have to look for his own money under an insolvency of sixpence in the pound.

4. Because, by the same decision, a host of cases, which have long been considered as the landmarks of trade, will be overturned, and the whole system of commercial dealing be shook to its very basis.

5. Because, by the first principle of the second decision of the supreme court, against a debt contracted through the medium of a factor, who has no claim on the money, a right of set-off against the principal seems to be denied, though such principal may owe the defendant ten times the amount; and this merely because a factor may sue in his own name for account of his principal.

6. Because, under that part of the decision of the supreme court, any man who chooses to trade through the medium of a factor, or agent, might, by bringing his actions in the name of the agent, render the whole statute of set-off a dead letter.

7. Because the supreme court have given, as a reason for

IN ERROR.
.........
ALBANY,
March, 1815.

CAINES
v.
BRISBAN.

their second judgment, a fact which was immaterial to the issue, and which, by their first judgment in the above causes, they determined to be so.

8. Because, by the second decision of the supreme court, it appears that *trusts* have been confounded with the *uses* on which they are held, and a transfer of the *use* being supposed to create a complication of the *trust*, making thereby a complication of a trust depend, not on a diversity of interest, but a change of parties.

9. Because, by the second decision of the supreme court, the right of set-off is construed to exist only between parties to the record, the necessary result of which must be, that either an assignment of a debt, or a contract made through an agent, though for the benefit of another, would destroy the effect of the act; and, thus, a statute formed on equitable principles be made to operate against equity.

10. Because, by the second decision of the supreme court, it appears, that though the construction of the statute, objected to in the last and ninth reason, should be relaxed, and a set-off admitted in favour of *cestuy que trusts*, still such set-off must, by the judgment of the court, be limited to cases where the set-off is less, or equal to the amount of the debt demanded, and will not extend to cases where the set-off is of a larger sum than the debt claimed; from whence this incongruity will follow, that a payment may be made with a small sum which cannot be made with a larger; or, in other words, that, against a demand for 100 dollars, a set-off of 100 dollars will be a good bar to a recovery, but a set-off of 150 dollars will not.

11. Because, under the same decision, the remedial act for the amendment of the law is construed strictly, not according to its spirit, but its letter, and the particular relief, afforded by the first section, is made to destroy the general relief afforded by the tenth; and thus to operate as a *virtual* repeal, in a *particular* instance, of a *subsequent* clause of the same act, by which a general and universal right is given in *all* instances.

12. Because, under the second decision of the supreme court, where a suit must, in order to satisfy the forms of law, necessarily be in the names of the plaintiffs, a defendant cannot show in whom the right to the subject matter of the suit is, in bar to an action prosecuted on account of a person who has no

IN ERROR.
..........
ALBANY,
March, 1815.

CAINES
v.
BRISBAN.

right; and thus the recovery will be controlled by the names of the parties, and not by their rights, as shown on the record.

13. Because, under the second decision of the supreme court, in cases of insolvency or bankruptcy, where, by the statute giving relief, the assignees are not authorized to sue in their own names, their legal right to the debts assigned, can never be pleaded as a bar to a recovery on an assignment made in fraud of their rights, under the statute; the result of which would necessarily be, that a colluding creditor might recover the whole of the insolvent's debts, and, under the judgment of a court of law, put them into the hands of the insolvent himself, against his own assignees, under the statute, who would have no remedy but by a suit in equity against the insolvent.

14. Because, under the insolvent act of *April*, 1811, all suits by the assignees, for the real and personal estate of the insolvent, must be in their names; therefore, the second decision of the supreme court is, in that point, erroneous in its very foundation.

15. Because, under the insolvent act of *April*, 1811, assignments made by debtors, who become insolvent, within the meaning of that statute, after its passing, are prohibited and declared fraudulent, and are therefore void by operation of law; yet, according to the decision of the supreme court, assignments thus made against law, are a good basis on which to ground a recovery at law; contrary to the maxim of *ex dolo malo non oritur actio*, that is, a fraudulent act can never give a right of action.

The following reasons were offered by the defendants in error for affirming the judgment:

As to the second plea,

1. Because the replication is a full and sufficient answer to the plea. The defendant pleads, that *Isaac Riley* was indebted to him in a sum exceeding the plaintiff's demand; and that *Riley* carried on business by the plaintiffs, in their partnership name, and, by them, sold the goods for which the suit is brought to the defendant. Now, the whole ground of the claim to set-off comes from the alleged fact, that *Riley*, though under the name of another, was, in truth, the vendor of the goods, and that, therefore, it was a case of mutual indebtedness between him and the defendant. The plaintiffs traverse the fact, that *Riley*, by the plaintiffs, or otherwise, sold the

IN ERROR.

ALBANY,
March, 1815.

CAINES
v.
BRISBAN.

goods; and whatever might be the indebtedness of *Riley* to the defendant, it is manifest that that cannot be the subject of set-off against the plaintiff's demand, unless they acted for, or on behalf of *Riley*. The very allegation, then, upon which the whole claim to set-off rested, is directly and distinctly denied in as broad terms as it is alleged; and this is consistent with the known and established rules of pleading. The replication may at once deny the particular fact intended to be put in issue, and conclude to the country.

2. The plea is, also, in itself a nullity. At common law, debts could not be set off, but the party was put to his cross action. Our act, which has varied the common law, allows the defendant to plead the general issue, and give notice of the matter he intends to set off. It is a rule, that where a statute gives a remedy, not known to the common law, that remedy alone can be pursued. In this case the rule should be rigidly inferred. The remedy given is simple and inartificial, calculated to expedite justice, and to rescue parties from the labyrinth of legal subtleties and forms.

3. But even admitting that *Riley* was a *cestuy que trust*, for whose use the goods were sold, yet a court of law cannot recognise and settle such interfering and complicated trusts as are unfolded by this plea. The plaintiffs having openly acted as the owners in the sale of the goods, the promise enured to them, and they can rightfully maintain the action in their names. *Riley*, at most, then, had only an equitable interest; the legal title was in them; and they, by the direction of the *cestuy que trust*, have assigned the demand to *Fairchild* for a *bona fide* consideration. A court of law is incompetent, from its constitution, to prove the nature of their respective rights.

4. It is not a suit in which our statute authorizes a set-off, which applies to the case where two or more persons, having dealings together, are indebted to each other, and one brings a suit against the other. The plea discloses no mutual dealings between the plaintiff and defendant. There never was a time when the plaintiff could, at law, have availed himself of this asserted set-off. The original contract was between other parties, and the plaintiff in this suit was never indebted to the defendant. No balance could be certified against them in favour of the defendant.

As to the third plea,

IN ERROR.
‥‥‥
ALBANY,
March, 1815.

CAINES
v.
BRISBAN.

1. This plea proceeds upon the ground, that *Riley* was fairly indebted to *Fairchild*, and that the assignment from the plaintiffs, to secure that debt, while *Riley* contemplated taking the benefit of the insolvent law, of the 3d of *April*, 1811, was void, as giving him an unjust preference over other creditors. At common law such assignment is clearly valid; for one creditor has a right, if he can, to obtain payment or security, in preference to another. *Vigilantibus non dormientibus subvenit lex.* If the assignment is invalid, it must be made so by the act. Now, the act does not invalidate the assignment; it merely provides, that if the debtor, after being prosecuted or imprisoned, shall give such preference, he shall not be entitled to the benefit of the act. It is an objection to the discharge of the debtor, not to the validity of the assignment. It is directly the converse of the provisions of the *English* bankrupt laws, by which the bankrupt is discharged, but the assignment avoided.

2. But even if such assignments were, by the general provisions of the act, invalidated, yet this plea is wholly defective, in not stating that *Riley* was prosecuted after the passing of the act, and made the assignment after the prosecution. On the contrary, it is expressly averred, that he was not prosecuted by *Fairchild*; and it is no where alleged that he was prosecuted by any one else. To bring the case within any of the provisions of the act, even as an objection to the intended application of *Riley* for a discharge, it was necessary to allege that a preference was given, not only after a suit commenced, but that such suit was, in fact, commenced after the passing of the act. This results expressly from the last proviso of the first section.

3. But independently of these grounds, the defence in the plea is utterly untenable on any principle. The defendant admits the debt, and the plaintiffs are the only persons in law recognised as capable of recovering it. The asserted fraud on *Riley's* creditors cannot release the defendant from *his* liability. Whether the plaintiffs, after recovery, would hold the money in trust for *Fairchild*, or for *Riley's* creditors, is a question between them, which the defendant is neither bound nor admitted to litigate. It is not pretended that the assignees have ever interposed, or forbid payment to the plaintiffs or *Fairchild*.

*Caines*, for the plaintiff in error. The principle of the deci-

IN ERROR.
......
ALBANY,
March, 1815.

CAINES
v
BRISBAN.

sion of the supreme court, in the case in 10 *Johns. Rep.* 46., (*Brisban & Brannan* v. *Caines*,) is, that a secret assignment of a debt deprives the debtor of his right of set-off. That position is erroneous: that the assignment may produce such an effect, it is necessary that it should be accompanied with notice; and the assignment is valid, in respect of the debtor, not from the day of the assignment, but from the time that notice was given. The date of the assignment is altogether immaterial. Here, the plaintiff in error never had notice; his right of set-off, therefore, continued unimpaired.

The replication of the plaintiffs below is bad: it is argumentative, does not answer the plea, is a negative pregnant, and tenders an immaterial issue.

In the second case, (10 *Johns. Rep.* 396.,) the supreme court put their decision upon an objection that never was made; it was not contended that the agent could not bring the suit, but it is admitted that either principal or agent might have brought it. They say, too, that the trust is " interfering and complicated ;" but it is contended that it is a simple trust, and that *Riley*, and not *Fairchild*, is the *cestuy que trust*. But, admitting that *Fairchild* were the party beneficially interested, still the set-off would be good for want of notice.* A set-off must be allowed wherever a cross action could be brought, for a set-off is in the nature of a cross action;† and, if *Fairchild* had an interest, it should be allowed, in order to prevent a suit in equity.‡ The court say, that the statute of set-off refers merely to the parties on record: but it is contended, that it is unimportant who are the parties to the record; we are to look merely to the persons beneficially interested.§ It is no objection, as it was considered by the court below, that the plea shows a demand larger than the one declared for, and that the plaintiffs to the record owe nothing.|| Nor is it an objection that the set-off was pleaded. By the 1st section of the act for the amendment of the law, a set-off is made a defence, and by the 10th section a defendant may plead as many several matters as he may think necessary to his defence. By the ten pound act, the defendant is allowed to plead or give notice of a set-off. Where a larger sum is due from the plaintiff, it is more proper to plead than to give notice.** But supposing the plea to be bad, the plaintiffs have made it good, by replying, without objecting to the matter of form, by special demurrer. As to *Fairchild's* interest, it appears, from

* 5 *Johns. Rep.* 105. 8 *Johns. Rep.* 152.

† *Bull. N. P.* 179.

‡ 4 *Ves.* jun. 118. 2 *Burr.* 826. 8 *Johns. Rep.* 156.

§ 1 *Term Rep.* 622, 623. 1 *Johns. Cas.* 54. *Tuttle* v. *Bebee*, 8 *Johns. Rep.* 152.

|| *Ruggles* v. *Keeler*, 3 *Johns. Rep.* 263.

** *Tidd*, 606

IN ERROR.
.......
ALBANY;
March, 1815.

CAINES
v.
BRISBAN.

the pleadings, that he only had an authority to collect, and nothing more.

As to the second plea in bar; that plea states an assignment by *Riley* to *Fairchild*, in preference to his other creditors. It is a principle applicable to the insolvent act of 1811, that after the passing of that law, if any one should become an insolvent under the act, he cannot, after becoming such insolvent, assign or distribute any of his property. One object of this statute is to prevent fraud; it should, therefore, be construed liberally. The statute itself, in the 1st section, prohibits this very act: it compels the debtor to swear that he has not made any preference among his creditors, or any preferential assignment of his property after he had become insolvent. Every penalty in a law implies a prohibition,* and, in the 7th section of the act, there is a penalty imposed on preferential assignments. This assignment was made by *Riley* subsequent to his becoming an insolvent.

The suit was not brought, as is asserted by the court below, in the names of the right persons, but should have been in the names of *Riley's* assignees. By the common law, *choses in action* could not be assigned but the act enables assignees to collect debts in their own names. A plaintiff must show that the debt which he demands is not only due from the defendant, but is due to himself; and the demurrer to this plea confesses that the debt was due to *Riley*.† After the assignment of *Riley's* estate, the defendant could pay the debt to no other than *Riley's* assignees: of this assignment he had complete notice, previous to the commencement of the suit, for a newspaper notice is a sufficient notice under the statute. Had the defendant paid the money, after notice, to the insolvent, it would have been in his own wrong, and would have been no defence in an action by *Riley's* assignees.‡

*Henry*, for the defendants in error. The principles contended for on the opposite side, are not disputed: it is only necessary to show that they do not apply to this case. From the plea, it appears that the defendant dealt with the plaintiffs as principals; that the debt was assigned to *Fairchild*, for a fair and valuable consideration, to pay a debt due from *Fairchild* to *Riley*, and that *Fairchild* was not a mere agent or attorney to

* Carth. 252.
Rep. 60.

† Bac. Abr.
Pleas & Plead-
ings. Hob. 104.
Vaugh. 8. 58.
Co. Lit. 265.

‡ 1 Term Rep.
62. 12 East, 656.

IN ERROR.
......
ALBANY,
March, 1815.

CAINES
v.
BRISBAN.

collect the money. In the replication it is denied that the plaintiffs were agents.

Under the second plea, the defendant could not avail himself of the set-off: a set-off can only be between persons dealing together, and mutually indebted; and there must not only be mutuality of indebtedness, but an individuality.* The supreme court says, " you shall not impair the right of a third person by this set-off:" they say, " you shall not impair the right of the factor by this set-off, neither will we hear it, because it will draw into examination the accounts of the factor."† Fairchild claims under the assignment which was made for a good consideration. Mr. Caines asserts, that Riley was the person really interested : now, how are the rights of Fairchild to be tried ? Can the court award an interpleader ? Or would they examine into these complicated trusts, on affidavits ?

*Montague on Set-off, 23.

†Comp. 251. Montague on Set-off, 33.

The court below considered the plea bad, because it was a special plea in bar, and not the general issue, with notice. The right of set-off was not given by the common law, but was introduced by statute, and the statute having prescribed the mode in which a party may avail himself of his set-off, he can resort to no other. This was, no doubt, intended by the legislature to save costs, and to avoid the intricacy and expense of special pleading. The 10th section of the act, for the amendment of the law, relied on by the opposite counsel, does not vary the form ; that section merely gives a defendant the right of multiplying his grounds of defence.

It is said, that the replication to the plea made it good : it is true that a plea, defective in matter of form, is cured by the replication ; but here the plea is defective in substance. It is not insisted that a set-off is admissible only between parties to the record; but the main fact alleged in the plea is, that the plaintiffs sold as factors, and not as principals : the replication denies this allegation, and takes an issue upon the very foundation of the equity on which the defendant rested.

As to the second special plea, it will appear, upon examination, that there is an acknowledgment of a debt due from Riley to Fairchild; of course, that there was a consideration for the assignment; but that Fairchild was preferred to the other creditors. The English bankrupt law, it is true, would render such a preference void, but under the insolvent act of 1811, it is valid as to the creditor preferred, and the whole penalty rests

IN ERROR.
......
ALBANY,
March, 1815.

CAINES
v.
BRISBAN.

upon the insolvent, by precluding him from the benefit of the act. There was then a perfect right vested in *Fairchild*, of which the act never intended to devest him. There is no intimation, in any part of the plea, that *Riley* was either prosecuted or imprisoned; therefore, the plea is defective in substance, under the statute. It was urged, on the other side, that the 7th section of the act imposed a penalty upon those who took advantage of the preference; but that refers to trusts, and not to assignments for the payment of debts. The plea is also bad, because it does not appear to whom the assignment was made.

It was contended, also, on the other side, that *Riley's* equitable interest passed to his assignees; and that they might have sued in their own names. This is denied: the assignees would have no other right than what the insolvent himself possessed. Suppose the insolvent were the assignee of a bond, or a *cestuy que trust*, his assignees could not bring an action in their own names, but could have the same rights only, to recover the debt, as the insolvent had.* The action was properly brought in the name of the present plaintiffs; and, as was said by the supreme court, the claim of *Fairchild*, on the one hand, and of the assignees of *Riley*, on the other, cannot be tried in this suit. Suppose the money were to be brought into court, would the supreme court put the assignees of the insolvent, and the holder of the chose in action, upon their trial by affidavits?

*Caines*, in reply, denied that the defendant below dealt with the plaintiffs as principals; the very words of the plea show that the plaintiffs were mere agents. The individuality and mutuality of the parties, therefore, existed; for the parties were the defendant and *Riley*, who was the only person interested before the assignment to *Fairchild*; and it does not appear, from the pleadings, that the plaintiffs had any lien upon the goods or debts of *Riley*. In answer to the objection, that the plea does not state that *Riley* was prosecuted or imprisoned before the assignment to *Fairchild*, he said, that it was stated that, on such a day, *Riley* became an insolvent, within the intent and meaning of the act, and, also, that the assignment was made on a day after that on which he became an insolvent.

CANTINE, Senator. The plaintiff in error claims to have the

* 1 *Atk.* 193.

judgment of the supreme court, in this cause, reversed, on the ground that both his special pleas, in bar, are good, and well pleaded; and that the replication of the defendants in error, to the first special plea, is bad; because it traverses what is merely matter of inducement; that it tenders an immaterial issue; and is argumentative.

*IN ERROR.*
........
ALBANY,
March, 1815.

CAINES
v.
BRISBAN.

The supreme court determined that both pleas were bad, and on that determination their judgment is founded; on the sufficiency, or insufficiency, of the replication they gave no direct opinion.

Though I cannot subscribe to the correctness of all the reasoning of the court, in support of their judgment, yet, from the view I have taken of the subject, my mind has been brought to a conclusion in favour of its affirmance.

There appears no good reason against the right of set-off in this cause, if the plaintiff in error can avail himself of that right, under a special plea of set-off. The statute allows a set-off where " two or more persons, dealing together, are indebted to each other, or have demands arising on contract, or credits, against each other." Assuming for a fact, what the plaintiff in error averred in his plea, that the goods were sold to him by *Riley,* through his agents, *Brisban & Brannan,* for the profit and account of the said *Riley,* and at his risk, it is, manifestly, a dealing together, between *Riley* and the plaintiff in error, within the very words of the act.

This suit might have been brought in the name of *Riley,* as well as in the name of the present defendants in error : and, in such case, no one would have pretended to controvert the plaintiff's right of set-off : has, then, that right been impaired by the assignment to *Fairchild,* or by the circumstance of the suits being brought in the name of *Brisban & Brannan,* the agents of *Riley ?* I think not; this case presents no interfering, or complicated trusts; but a simple and direct transmission of interest from one to another, making only a change of parties to the same interest. The assignment to *Fairchild* could not at all affect the rights which the plaintiff in error had previously acquired; he took, subject to the equities between the original parties : it would be in the highest degree unjust, and would render the statute of set-off a dead letter, to permit a creditor to deprive his debtor of his right of set-off by a transfer of his demand to a third person; the supreme court have uniformly taken cogni-

IN ERROR.
.......
ALBANY,
March, 1815.
CAINES
v.
BRISBAN.

zance of the assignment of choses in action, to avoid driving parties into a court of equity. In the case of *Andrews* v. *Becker,* (1 *Johns. Cas.* 411.,) the defendant pleaded a release of the action from the plaintiff on the record; to this there was a replication, stating that the bond, on which the suit was brought, had been assigned to *Adams & Parish,* of which the defendant had notice : this replication was held to be good, and the interest of the assignees protected : the same principle is recognised and fully established in a number of subsequent decisions. (*Wardell* v. *Eden,* 2 *Johns. Cas.* 121. S. C. 1 *Johns. Rep.* 531. *Littlefield* v. *Storey,* 3 *Johns. Cas.* 425.)

These decisions are certainly agreeable to equity and common sense ; but upon the same principles, and for the same reasons, are we also bound to protect defendants in their right of set-off, acquired before a transfer of interest by the plaintiffs on record.

To limit the right of set-off to the parties to the record, would greatly narrow down the beneficial operation of the statute. The former decisions of the supreme court have been uniformly in favour of extending the benefit of this statute to the parties in interest, though not parties to the record. In the case of *Johnson* v. *Bloodgood,* (1 *Johns. Cas.* 51.,) the court decided, that they would protect the interest of the *cestuy que trust* against a set-off, which would have been good against the plaintiff on the record, had the interest remained in him. The same principle is contained in the case of *Littlefield* v. *Storey,* (3 *Johns. Cas.* 425.) The case of *Ruggles* v. *Keeler* (3 *Johns. Cas.* 263.) is analogous to the present ; the court there permitted the defendant to set off a demand against one *Walker Lewis,* in bar of the plaintiff's right of action, on the ground of *Lewis's* being the party in interest, *Ruggles* having assigned the demand to him. And in the case of *Tuttle* v. *Beebee,* (8 *Johns. Rep.* 152.,) the court permitted the defendant to set off bonds, which had been assigned to him by third persons, against the plaintiff. From these decisions, it is manifest that the supreme court, in regulating the right of set-off, have always had regard to parties in interest, though not parties to the record. On the argument in this court, it was contended, in behalf of the defendants in error, that, being factors of *Riley,* they had a right to bring the suit in their names, and to retain in their own hands, whatever might be due them from *Riley,* as having a legal lien.

IN ERROR.
........
ALBANY,
March, 1815.

CAINES
v.
BRISBAN.

on those demands to satisfy themselves first; and, in support of this principle, they cited *Drinkwater* v. *Goodwin*, (*Cowper*, 255.,) and insisted that the plaintiff could not, therefore, set off, in this suit, his demand against *Riley*.

It is not necessary to deny that, as factors, they had a lien on this demand for what *Riley* might owe them. To controvert the correctness of the conclusion, that the plaintiff's right of set-off was thereby destroyed, let it be conceded, that if *Riley* had been indebted to them at the time when the goods were purchased, or prior to the time when the plaintiff in error acquired any right of set-off, that their lien would have had the preference of the plaintiff's set-off; it does not follow that, if such lien did not exist, the plaintiff would still be deprived of a right of set-off. The case of *Drinkwater* v. *Goodwin* is not analogous to the present case; there the defendant claimed the benefit of a payment to the factor of *Drinkwater*, and showed affirmatively that the factor was a creditor, having a lien on the demand in controversy. In this case it appears affirmatively that the factors have no lien; because, as agents of *Riley*, they have assigned the demand to *Fairchild*, for his use and benefit alone, and to secure to him the payment of a demand he had against *Riley*. The assignment, in this case, must, therefore, be considered in the same light as one made immediately by *Riley* to *Fairchild*, and in which the defendants in error have no sort of interest whatever.

The next inquiry is, could the plaintiff in error plead his set-off specially in bar of this action; or should he have pleaded the general issue, and given notice of it, as the act directs. The remedy by set-off is a creature of the statute; it did not exist at common law; the plaintiff in error was bound, therefore, to confine himself to the remedy as appointed by the statute. The supreme court, in the case of *Tuttle* v. *Beebee*, before cited, say, that this statute must be liberally expounded. It is undoubtedly proper, and for the advancement of justice, that it should be so construed; but there is certainly a wide difference between a liberal construction of a statute, and a total departure from its provisions. A strict construction of the act would limit the right of set-off to the parties to the record; but to answer its beneficial purposes, it is necessary to extend that right to the parties in interest, though not parties to the record. Again, the act directs that, where the plaintiff is overpaid, the jury *shall* find a verdict for

the defendant, and certify the amount due from the plaintiff, &c. A strict and literal construction of this branch of the statute would produce the difficulty suggested by the supreme court in their decision of this cause. A liberal construction would permit the defendant to set off as much as was necessary to protect himself against the claim of the party in interest, though not to the record; and yet the remedy appointed would be pursued, because exactly in the form prescribed by the act: nor is there any good reason to suffer a departure from the form prescribed; it is not at all necessary to promote the ends of justice. This form was undoubtedly appointed to facilitate legal proceedings, and to disincumber them from the intricacies of special pleading; and it affords as ample and perfect relief as can possibly be had by means of a plea of set-off. If it had not been intended to confine a party to the form prescribed, the provision would have been, in the alternative, that he might plead his set-off specially, or plead the general issue, with notice of it. This appears manifest from the consideration that our statute is taken from one of Geo. II., on this subject, in which the remedy, by set-off, is thus given in the alternative.

In 1 Saunders, 136., (note 4.,) Sergeant Williams, in speaking of remedies given by statute, says, "The distinction seems to be this; where a statute makes unlawful that which was lawful before, and appoints a specific remedy, that remedy must be pursued, and no other." And in the case of Miller v. Taylor, (4 Burr. 2406.,) this rule was considered as applicable to civil cases.

A subsequent section of the same act, gives to a party a right to plead as many several matters as he shall think necessary for his defence; and it was strongly urged, that a just and liberal construction of this section gives the right to plead a set-off specially. What was the object of that section of the act? What was the relief intended to be granted? It was to remove a difficulty which existed at common law. Before this act, a party was not permitted to plead different defences to the same action. But it is not necessary to permit a set-off to be pleaded, specially, to carry the objects of this section into full and entire effect; every benefit intended to be secured by it, is equally attainable by a plea of the general issue with notice; and because a defendant may now plead as many matters as he may judge necessary for his defence, it by no means follows that he

IN ERROR.
.......
ALBANY,
March, 1815.

CAINES
v.
BRISBAN.

may also alter a prescribed form. The legislature having thought proper to appoint the mode by which a party shall avail himself of a set-off, and that mode affording a full and perfect remedy, it would be manifestly wrong to permit a departure from it.

But if the plea is good, the replication is so also; it tenders a full and perfect issue. What is the fact put in issue by the plea? Why, that the plaintiff purchased the goods of *Riley*, through *Brisban & Brannan*, his agents, and that the plaintiff had a set-off against *Riley*. Suppose the replication had also negatived the averment, that *Riley* was really and ultimately beneficially interested in this suit; and the cause had been brought to trial before a jury; and, on the trial, the plaintiff had failed to prove that the goods were sold and delivered to him by *Brisban & Brannan*, as the agents of *Riley*, would it have been competent for him to prove that *Riley* was beneficially interested in any other manner? Clearly not. The interest of *Riley*, through *Brisban & Brannan*, is the fact put on trial by the plea; that fact is fully answered by the replication, and an issue tendered; the plaintiff's demurrer, therefore, was not well taken.

The plaintiff's last plea is manifestly bad. I will add one reason to those contained in the decision of the supreme court. The act of 1811, which prohibits a preferential assignment by a debtor, has this exception in it: "But this proviso shall not extend to any debtor who shall have been imprisoned, impleaded, or prosecuted, as aforesaid, before the passing of this act; nor shall such debtor be required to take that part of the oath which relates to a preference among creditors."

The plaintiff's plea has no averment, that *Riley* was not imprisoned, impleaded, or prosecuted, before the passing of the act. If, then, an assignment, under this act, to a *bona fide* creditor, made by a debtor imprisoned, impleaded, or prosecuted, after the passing of the act, was void; yet, if such debtor had been imprisoned, impleaded, or prosecuted, before the act was passed, he had a right, by the very provision of the act, to make a preferential assignment to a *bona fide* creditor; such assignments were left on the same footing as though this act had never had existence. The plea admits that *Fairchild* was a *bona fide* creditor; and, for aught that appears upon the face of this plea, *Riley* had a just and legal right to make the assignment

IN ERROR.
......
ALBANY,
March, 1815.

GAINES
v.
BRISBAN.

to him. I am, therefore, of opinion, that the judgment of the supreme court ought to be affirmed.

SANFORD, Senator. Without examining all the questions which learning and ingenuity have brought into discussion, in this cause, my mind rests with satisfaction upon two points, which are decisive.

Whether the second plea is good or bad, I think the replication sufficient. The plea alleges, that *Riley* was the real vendor of the goods; this allegation is material; and is, indeed, the basis of the whole plea. The replication denies that *Riley* was the real vendor of the goods; and thus selects a single certain material fact, from the various matters set forth in the plea, and puts it in issue. The other facts are admitted, this alone being denied. The question, whether *Riley* was the real vendor, or not, appears to me to be a fair and material issue, and one which must determine the whole cause.

The third plea is bad in substance. Taking the facts as they are stated, *Fairchild*, a creditor, had a right to obtain payment from *Riley*, his debtor; and *Riley* had a right to pay this creditor, in preference to others. *Riley* assigned the debt demanded by the suit to *Fairchild*, who received it in part payment of *Riley's* debt to him. The intention of *Riley* to prefer *Fairchild* to other creditors, and to apply for his own discharge from his debts, cannot invalidate this assignment, or payment. Such a transaction is clearly valid at common law, and is not impeached by the statute of the 3d of *April*, 1811.

For these reasons, I am of opinion, that the determinations of the supreme court, upon both demurrers, were correct, and that their judgment ought to be affirmed.

March 28th.        This being the unanimous opinion of the court, it was thereupon ORDERED and ADJUDGED, that the judgment of the supreme court be affirmed; and further, that the defendants, in error, recover against the plaintiff, their damages, by reason of the delay of the execution, and also their costs, in defending the writ of error, in this cause, to be taxed, &c.; and that the record be remitted, &c.

                                Judgment of affirmance.